78 So.2d 500

### Dr. T. C. W. MAGEE

v.

### TEXAS CONSTRUCTION COMPANY.

No. 41613.

Feb. 14, 1955.

Talley, Anthony & Johnson, Bascom D. Talley, Jr., James D. Johnson, Jr., Bogalusa, for plaintiff-appellant.

C. Ellis Ott, Bogalusa, M. M. Roberts, Hattiesburg, Miss., for defendant-appellee.

HAMITER, Justice.

Dr. T. C. W. Magee, claiming that by reason of certain operations of the Texas Construction Company he sustained a severe loss on timber owned by him, instituted this suit against such corporation to recover damages of $30,000.

In the district court plaintiff was granted a judgment for $1,000. However, being dissatisfied with the award, he requested and obtained this appeal and seeks an increase to the amount originally demanded.

The defendant has answered the appeal, asking that the judgment be reversed and the suit dismissed. Alternatively, it prays that the award be reduced to a "nominal sum" or, at least, be decreed ample and affirmed.

The record discloses that in the year 1944 plaintiff purchased a 268 acre tract of land located in Pearl River County, Mississippi,

on which there was considerable timber, he having paid therefor the sum of $2,500. Except for one side of the tract on which a slight ridge exists, the land is very low and swampy. A witness described the greater portion of the property as "sloggy, a morass".

In the spring of 1952 plaintiff agreed to sell to one Johnny Rogers, a logging contractor of Foxworth, Mississippi, the "oversized, the best timber" on the land, the purchaser to pay for the timber taken at $25 per thousand feet for the hardwood and an average of $5 for each cypress piling. Of the over-sized hardwood expected to be cut there were approximately 500,000 feet. It was understood that the logging would not commence until the next period of dryness, a reasonable freedom from moisture as to a portion of the land evidently having been an important consideration in the fixing of the price agreed upon.

In September, 1952, during an extensive dry period, Rogers began logging operations on the part of the tract that was reasonably free of water and which contained about one-half of the 500,000 feet of hardwood to be cut. Because of the dryness he was able to operate with caterpillar tractors and at an expense of about $5 per thousand feet less than when logging with skidders as would be required thereafter in taking the remaining one-half which was still surrounded by water. But his operations were of short duration. Some three or four days later, and after he had taken some 50,000 feet of

hardwood, the dry area that had existed became inundated. The result was that he could no longer perform the logging with caterpillar tractors, as had been planned, and he stopped the work.

The trial judge found, and the evidence preponderately shows, that the inundation was caused by acts of the defendant in constructing a cofferdam in Pearl River at a point known as Pool's Bluff, a few miles distant. By virtue of such structure the river was diverted from its normal channel and some of the water thereof coursed to and on plaintiff's property. Conceding this, defense counsel state: " * * * We will not dispute the findings of the trial judge that this dam did cause some water to back up or trickle onto the Magee land, but we are not in position to concede that as much water backed up into this land as some of plaintiff's witnesses claimed." Therefore, the defendant, having been at fault with respect to the inundation, is obliged to compensate plaintiff for whatever damages he sustained as a result of its acts. LSA–Civil Code Article 2315.

Contrary to the allegations of the petition of plaintiff, the timber itself suffered no deterioration or other injury. In fact, during the trial plaintiff's counsel admitted that "the texture and quality of the standing trees themselves are not damaged by the water" and they stated that "it is not claimed that the presence of water around the trees has caused physical damages to the trees". And it is clear that the diversion of

water from the river caused no loss to plaintiff whatever with respect to the cypress and to one-half of the hardwood trees intended to be cut (250,000 feet), all of it having theretofore been surrounded by water.

■ The only loss that plaintiff sustained, as shown by the record, related to a decrease (over a period of five months during which the cofferdam and overflow waters remained) in the market price of the hardwood timber that Rogers was prevented from logging with caterpillar tractors. But defense counsel argue that such element of damage is not recoverable herein because plaintiff failed to allege it and an objection to any proof thereof was made during the course of the trial. It is true that the petition contains no specific allegations to such effect, although there are general averments that might suffice. Nevertheless, at the conclusion of a pre-trial conference an order was entered by the district judge reciting, among other things, that "plaintiff further seeks the recovery of damages from the alleged inundation which he contends he suffered as a result by the decrease in the timber market"; and the defendant, having thereafter gone to trial without any protest, was bound by that recital and order.

The award of $1,000 by the trial judge was wholly for the decrease in the timber price. He found and reasoned that of the 250,000 feet of hardwood in the initially dry area, Rogers had cut and removed 50,-000 feet and that there remained 200,000 feet affected by the inundation for which defendant was responsible; and that the price decline in the timber market during the mentioned five months' period of overflow was approximately $5 per thousand. Respecting these findings we perceive no manifest error, and, hence, cannot disagree with the district court's conclusion. While the evidence from which they are made is conflicting it is sufficient to sustain them.

■ Counsel for plaintiff contend that the judge should also have awarded $5 per thousand feet for the additional expense of logging by skidders the overflowed and uncut 200,000 feet of hardwood. Defense counsel have correctly answered this contention by stating: " * * * This position is not tenable for the obvious reason that if plaintiff and Rogers had continued to log the timber with skidders after the water came up and the logging expense had been $5.00 per thousand more, yet the plaintiff would have gotten his $25.00 per thousand and there would have been no loss on account of a decline in the price. Plaintiff cannot collect for both items at the same time."

For the reasons assigned the judgment appealed from is affirmed.